Matter of Anna F. (2018 NY Slip Op 05590)





Matter of Anna F.


2018 NY Slip Op 05590


Decided on August 1, 2018


Appellate Division, Second Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided on August 1, 2018
SUPREME COURT OF THE STATE OF NEW YORK
Appellate Division, Second Judicial Department

MARK C. DILLON, J.P.
SHERI S. ROMAN
SYLVIA O. HINDS-RADIX
VALERIE BRATHWAITE NELSON, JJ.


2017-07686

[*1]In the Matter of Anna F. (Anonymous). Faina Laut, petitioner-appellant. (File No. 1908/16)


The Family Center, Brooklyn, NY (Lauren Elizabeth Groetch of counsel), for petitioner-appellant.



DECISION & ORDER
In a guardianship proceeding pursuant to Surrogate's Court Procedure Act article 17-A, the petitioner appeals from an order of the Surrogates Court, Kings County (Margarita Lopez Torres, S.), dated February 16, 2017. The order, after a hearing, denied the petition and dismissed the proceeding.
ORDERED that the order is reversed, on the law and the facts, without costs or disbursements, the petition for guardianship pursuant to Surrogate's Court Procedure Act article 17-A is granted, and the matter is remitted to the Surrogate's Court, Kings County, for the entry of an appropriate decree naming the petitioner to serve as guardian of Anna F.
The petitioner commenced this proceeding in August 2015, pursuant to Surrogate's Court Procedure Act article 17-A, seeking to be appointed guardian of her sister, Anna F. A hearing was held on the petition, at which the petitioner established that Anna, then 51 years old, had suffered severe intellectual disability most, if not all, of her life. Anna's primary care physician certified that Anna suffers from "cerebral palsy with profound mental retardation,"[FN1] and is in need of 24-hour supervision, as she is not capable of feeding herself or moving about on her own. A psychological evaluation by the YAI-National Institute for People with Disabilities confirmed that
Anna was "largely nonverbal" and "non-ambulatory" and that she was so cognitively limited that her intelligence could not be successfully evaluated employing traditional IQ tests. Utilizing the Bayley Scales of Infant and Toddler Development, the evaluator assessed Anna of having attained a developmental age equivalent of 4 months, 10 days.
At the hearing, the petitioner testified that her parents had cared for Anna her entire life, until 2014, when both parents died. Since that time, Anna had remained in the apartment she had lived in with her parents, and home attendants were assisting her 24 hours a day. The petitioner further testified that although she had been able to manage some of Anna's affairs, she was limited without court-authorized guardianship, and had experienced difficulty in renewing the lease for the apartment where Anna lived and in maintaining Anna's Supplemental Nutritional Assistance Program benefits. In support of the petition, the petitioner submitted the affirmation of Anna's primary care physician and the affidavit of a licensed psychologist who also evaluated Anna, in [*2]which each independently concluded that Anna was incapable of managing herself and her affairs by reason of her disability, which was permanent in nature or likely to continue indefinitely. In the order appealed from, the Surrogate's Court denied the petition and dismissed the proceeding, concluding, without discussion, that a proceeding under Mental Hygiene Law article 81 would be more appropriate. The petitioner appeals.
Pursuant to article 17-A of the Surrogate's Court Procedure Act, "the court is authorized to appoint a guardian of the person [who is intellectually disabled] . . . if such appointment . . . is in the best interest of the person who is intellectually disabled." Under the statutory scheme, a person is intellectually disabled if that person has been certified by, among other possibilities, one licensed physician and one licensed psychologist "as being incapable to manage him or herself and/or his or her affairs by reason of intellectual disability and that such condition is permanent in nature or likely to continue indefinitely" (SCPA 1750[1]).
Here, the record establishes that Anna is intellectually disabled within the meaning of Surrogate's Court Procedure Act article 17-A. Further, the record also establishes that it would be in Anna's best interest to have the petitioner appointed as her guardian. The record shows that Anna is incapable of providing for her most basic needs and that in the absence of court-authorized guardianship, the petitioner, Anna's only sibling, is unable to adequately manage Anna's affairs. Nothing in the record suggests that the petitioner is unqualified to act as Anna's guardian. To the contrary, despite the legal limitations she has encountered, the petitioner has been managing Anna's affairs and providing for Anna since their parents' deaths. Accordingly, the Surrogate's Court should have granted the petition (see Matter of Mark C.H., 28 Misc 3d 765, 776 [Sur Ct, NY County]; cf. Matter of Michelle M., 52 Misc 3d 1211[A] [Sur Ct, Kings County]; Matter of Chaim A. K., 26 Misc 3d 837, 843 [Sur Ct, NY County]). We grant the petition and remit the matter to the Surrogate's Court, Kings County, for the entry of an appropriate decree naming the petitioner to serve as Anna's guardian (see SCPA 1754[5]).
DILLON, J.P., ROMAN, HINDS-RADIX and BRATHWAITE NELSON, JJ., concur.
ENTER:
Aprilanne Agostino
Clerk of the Court



Footnotes

Footnote 1: The physician's affirmation certifying Anna's diagnosis was dated March 17, 2015, which was prior to the July 21, 2016, amendments to article 17-A of the Surrogate's Court Procedure Act replacing "mental retardation" with "intellectual disability" (see L 2016, ch 198).